# Perry *et al.* versus Scott.

1. A father made a deed in fee to his son for a tract of land, not to take effect till after the father's death; the consideration was love and affection, and that the son should live with him and assist him to work his farm and support his wife for life if she survived the grantor. The son refused to live with his father and work for him. *Held*, that this was not a good defence in ejectment by the son for the land against the devisees of the father, who went into possession after his death.

2. The deed was not a conveyance on condition, for breach of which recovery of the land could be had in ejectment, nor had the devisees any interest in it. If the consideration were a condition, it was personal to the grantor and his wife, and died with them.

3. A consideration which amounts to a covenant cannot be enforced by ejectment.

4. It was a conveyance of land fully executed; and the fact that the consideration was a continuing one during the lives of the parents, did not make the deed an executory contract, even during that period.

5. A vendor in possession may defend in respect of unpaid purchase-money, or may sue in ejectment to recover it; but a stranger to the consideration cannot set up its non-payment as an impeachment of the conveyance.

ERROR to the Common Pleas of *Erie county*.

Ejectment by John W. Scott, against Almon Perry, Abner Scott and Mrs. H. A. Scott, for a tract of ninety-one acres in Erie county, late the estate of John Scott, deceased, under whom both parties claim.

The plaintiff below claimed under an "indenture," dated November 22d 1849, by which John Scott, "in consideration of the *sum* of natural love and affection which he, the said John Scott, hath and beareth unto the said John W. Scott, as also that the said John W. Scott hath this day agreed to live with the said John Scott, and labour for and assist him in working the land hereinafter described, and to maintain Patience Scott, the wife of

the said John Scott. if she survives him, during her natural life," conveyed to his son, the said John W. Scott, a tract of land in the county of Erie, with reservations as follows :—

"Excepting and reserving nevertheless the entire use and possession of said several described pieces and parcels of land, with the appurtenances, unto the said John Scott and his assigns, for and during the term of his natural life, and this conveyance in no way to take effect until after the decease of the said John Scott, the grantor, to have and to hold the said described pieces of land, *after the decease of the said John Scott*," to the said John W. Scott, his heirs and assigns, &c., * * "to the only proper use and behoof of the said John W. Scott (*after the death of the said John Scott*), with general warranty, ' *subject to the life estate of the said John Scott;* ' " the deed otherwise being in the ordinary form.

After the conveyance the son left his father; returned again; refused to labour for his father, and assumed the whole control of the land. The father left the premises, and the son, after request, having refused to deliver them to him, he brought ejectment, and recovered them.

The father afterwards made a will, dated February 26th 1861, and proved May 20th 1864, as follows :—

"I do hereby revoke, annul, and make for ever void all other wills by me at any time made, and particularly a certain will and testament (in form as a deed), recorded in the recorder's office of said county of Erie, in Deed Book U., at page 716, &c., witnessed by Miron Hutchinson and George H. Cutler. And I hereby give and assign as the reason of revoking and making void said will, that my son John W. Scott and his wife have failed to treat me with filial affection, and to comply with the conditions upon which I made said will. I give and bequeath unto my daughter, Parney P. Turner, wife of Alexander Turner, $75, to be paid out of the first moneys that shall come to the hands of my executor, after paying my just debts and funeral expenses, and expenses of settling my estate. Subject to the above, I give and bequeath all my personal property and real estate, of whatever name and nature, and wheresoever situated, to my daughters, Nancy Holliday, Anna Sanford, and Parney P. Turner, and my son Abner Scott, to be equally divided between them, to them and their heirs and assigns for ever. Subject to dower and share of the same belonging by law to my wife, Patience Scott, should she survive me."

Patience Scott, the wife, died before her husband.

The defendants below entered into the possession of the premises in question after the death of John Scott, and claimed under his will.

On the trial, before Derrickson, A. J., the defendants offered in evidence "the deposition of Henry Beaufoy, taken in a

former suit of John Scott v. John W. Scott, No. 106, February Term, 1861, to show the bad treatment of John W. to his father, and his failure to live with and labour for him, as called for in the deed given in evidence by the plaintiff. This the plaintiff's counsel objected to—as irrelevant and because the deed is not subject to conditions. The defendants further offered to prove, in connection with the preceding offer, that the plaintiff turned his father out of the possession of the land, and compelled him to resort to an action of ejectment to regain possession, and to bring an action of replevin to get back some personal property, in both of which the father was successful; and also that the son, John W., soon after the making of the deed by the father to him, left the land and went West, when his father told him that if he did go he would forfeit all right to the land. This, too, was objected to by the plaintiff's counsel as being wholly irrelevant; and the evidence under the several offers was rejected."

The verdict was for the plaintiff.

The defendants brought the case into this court, and here assigned for error the rejection of the foregoing offers.

*S. E. Woodruff*, for plaintiffs in error.—Cannot the deed of John W. Scott be impeached? Plaintiff in ejectment cannot recover upon a legal title the consideration of which has failed—which, if executory, would not have been enforced: Bishop v. Reed, 3 W. & S. 261. In this deed, the only valuable consideration is that the plaintiff would live with his father, labour for him, assist him in working the land, and after his death maintain the mother, the deed not to take effect till after the father's death. The rights of third parties have not intervened, and the court could grant relief. A deed to take effect *in futuro*, without a previous particular estate, is void: 1 Sharswood's Bl. Com., Bk. 2, p. 165.

The payment of a consideration is necessary to render a deed of bargain and sale operative: Boardman v. Dean, 10 Casey 252; the plaintiff has paid no consideration. There being no livery of seisin, and the deed not to take effect during the life of the grantor, the contract was *executory*.

The consideration of natural love and affection is sufficient in a deed, but in an *executory* contract it must be a *valuable* consideration to enforce it: Pennington v. Gitting, 2 Gill & Johns. 208; Chitty on Cont., Am. ed., p. 50, note 1.

The question *executed* or *executory* depends not on form of contract, but whether it has taken effect: 1 Sharswood's Bl., Bk. 2, p. 443.

The plaintiff is applying to have his contract executed, but it is offered to show that he has not complied with his part, and

[Perry *v.* Scott.]

therefore must fail: Brightly's Eq. p. 188, § 218; Fisher *v.* Worrall, 5 W. & S. 485; Benedict *v.* Lynch, 1 Johns. Ch. 374; Chess's Appeal, 4 Barr 52; Kennedy's Executors *v.* Ware, 1 Barr 445. The statute 6 Anne, c. 35, § 30, which gives force to the words " grant, bargain and sell," cannot aid plaintiff's deed, for that force is given only " unless when the same is restrained and limited by express particular words" in the deed. See, also, Act May 28th 1715, § 5 and 6, Purd. 229, pl. 64–5. *Livery of seisin* is essential to all legal titles. This may be constructive, as when grantor remains in possession he may be said to be seised for use of grantee, and equity will not compel possession to the grantee till he has complied with his part of the contract: Bishop *v.* Reed, 3 W. & S. Here the father refused to stand seised for his son, by declaring the deed should not take effect during his life. To enforce specific performance depends upon the equity and justice of all the circumstances of the case: Henderson *v.* Hays, 2 Watts 148; Remington *v.* Irwin, 2 Harris 143.

*James C. & F. F. Marshall*, and *George H. Cutler*, for defendant in error.—The words limiting the estate, to take effect after the grantor's death, are applicable only to possession not to title. The *whole* instrument must be taken into view. *"On condition"* may be construed " on the terms," to effectuate the intention: Meanor *v.* McKowan, 4 W. & S. 302; Shoenberger *v.* Lyon, 7 Id. 192. A reservation as large as the grant is void: Id. John W. Scott took a fee subject to his father's life estate. One may convey a fee to another, reserving the possession to himself for life: Chappel *v.* Row, 9 Barr 72. The frequent allusions to the life estate show that the grantor defined the respective rights with care.

The consideration is not a condition; natural love and affection is a good consideration: an agreement to pay money or perform service is a good consideration, and the conveyance is a perfect one subject to grantor's life estate. If there had been no life estate reserved, and the son had gone into possession and refused to fulfil his part of the contract, the father could not have enforced the performance of the contract by ejectment: Cook *v.* Trimble, 9 Watts 15; Bear *v.* Whistler, 7 Id. 144. Condition of forfeiture should not be enforced, except under an authoritative rule: Paschall *v.* Paschall, 3 Harris 295. A condition may be enforced by ejectment; but a consideration although amounting to a covenant cannot: Cook *v.* Trimble, *sup.*

The opinion of the court was delivered, January 8th 1866, by

WOODWARD, C. J.—This cause was so tried in the court below that the questions of law which grew naturally out of the facts

were not brought upon the record, and are not, therefore, to be decided, though they were somewhat discussed in the argument.

The action was ejectment by John W. Scott to recover from his brother Abner, and the others in possession, the homestead of their deceased father, John Scott. John W. Scott claimed under an instrument of writing in the nature of a deed, which his father made to him on the 22d of November 1849. This instrument styles itself an indenture, was signed and sealed by the grantor in the presence of witnesses, and was recorded, though we have upon our paper-books no statement or evidence touching its acknowledgment or delivery. The fair presumption, however, is, that it was both duly acknowledged and delivered. It sets forth a consideration of natural love and affection for the grantee, John W. Scott, and also his agreement to live with the grantor and assist him in working the land conveyed, and to maintain Patience Scott, the wife of the grantor, during her natural life if she should survive him, and then it conveys to the said John W. Scott in fee simple the premises in dispute, excepting and reserving to himself, the said John Scott, for life, the entire use and possession of the premises; and then immediately following the reservation these words occur: " *and this conveyance in no way to take effect until after the decease of the said John Scott, the grantor.*" The *habendum* is " to have and to hold the said described pieces of land *after the decease of the said John Scott.*"

Subsequently to this conveyance, misunderstandings and disputes arose between the father and son, which resulted in the father's loss of possession, for which he brought ejectment against his son and put *him* out of possession. After having thus recovered possession of the premises, the father, on the 26th February 1861, made his last will and testament, and therein revoked the above-described instrument, which he styled " a certain will and testament in form as a deed," and devised all his real and personal estate to his daughters by name and his son Abner Scott, subject only to the dower of his wife Patience, should she survive him. She did not survive him, and at his death the devisees succeeded to the possession of the premises. The contest, therefore, was between the *grantee* in the deed, and the *devisees* in the will.

It would have been reasonable to expect that the defendants, claiming under the will, would have taken the position so plainly indicated by their testator, that the instrument under which the plaintiff claimed, though in form a deed, was in legal effect nothing more than a will, and as such a revocable instrument; and that it was revoked in point of fact by the subsequent will, under which they were in possession. This, indeed, was so obviously their line of defence that it is hard to believe they missed it altogether.

[Perry *v.* Scott.]

Yet as the case is presented to us, there is no trace of such a defence upon our paper-books. No point or prayer was put to the court upon the nature and legal effect of the deed, and no instructions were given by the court on the subject. A single bill of exception to evidence was sealed, and the only error assigned here is upon that bill.

The evidence offered and rejected as irrelevant related to the bad treatment of his father, by John W. Scott—to his turning his father out of possession, and to the action of ejectment by the father to regain the possession.

The sole error assigned is to the rejection of that evidence. The theory upon which the defence appears to have proceeded was that the deed was a conditional conveyance, and if a breach of condition could be shown the estate of the grantee would be defeated. It was called also an executory agreement, and the argument here was, that if they could have been permitted to show that John W. Scott had not performed his part, he could not have taken the estate intended to be conveyed. There were two grounds upon which the competency of the rejected proofs was placed.

A condition in a deed may be enforced by action of ejectment at the suit of a party having an interest in the condition: Bear *v.* Whistler, 7 Watts 144. And possibly, in some circumstances, it may be enforced as matter of defence to an ejectment. But if we could find a condition in this deed, we could not see what interest the defendants below had in it, for the condition, if any, was the support of the grantor and his wife for life, and that was personal to them, and died with them. The devisees succeeded to no such covenant, and had no interest whatever in it.

There are, however, no words in the deed to create a condition —neither *proviso, ita quod,—sub conditione* ,nor any equivalent for these usual if not indispensable words. The agreement for support is merely recited as part of the consideration which moved the grantor to make the deed, and it has been held that a consideration which amounts to a covenant cannot be enforced by ejectment: Cook *v.* Trimble, 9 Watts 15.

In that agreement, such as it was, the defendants had no interest, for nothing was to be rendered to *them*, and therefore as to them it was ground neither for prosecuting or defending an ejectment. Bishop *v.* Reed, 3 W. & S. 261, is cited as an authority for the defence set up, but that was simply the case of equity refusing to give effect to a deed founded in mistake and fraud, and is not susceptible of application to the facts of this case.

Nor can we understand upon what ground the deed in question here can be considered as an executory contract. If the consideration were executory during the lifetime of the grantor and

[Perry v. Scott.]

his wife, it ceased to be so at their death, for as a consideration it ceased utterly.

But the conveyance of the land was fully executed. A deed, signed, sealed, acknowledged, delivered and recorded, is surely an executed contract. The agreement for services, which constituted part of the consideration, was a continuing contract on the part of the vendee during the lives of his parents, but it no more made the deed executory than an unpaid bond or mortgage for purchase-money would have that effect. An agreement may be executory on one part, and fully executed on the other, as is the case in every conveyance where purchase-money remains unpaid. Whilst a vendor in possession may defend in respect of unpaid purchase-money, or, if out of possession, may sue in ejectment to recover it, a stranger to the consideration may not set up the non-payment of purchase-money as an impeachment of the conveyance. But the defendants were not defending as vendors in possession. They were strangers to the agreement for services, which constituted the valuable part of the consideration of the deed.

These services were not due to them, and whether rendered or not, was an inquiry, if open at all, rather for the personal representatives of the decedent than for his devisees.

Therefore we conclude the court was right in shutting out all inquiry in this action touching the agreement and performance or breach of it.

This disposes of the only question upon the record, but should another ejectment be tried between the parties, we would suggest that attention be given to the following points :—

1st. Was the instrument of 22d November 1849, a deed of conveyance, or a testamentary paper in the nature of a will ?

2d. If it was a deed of conveyance, could a freehold be created in *futuro*, with only a life estate *reserved* to support it, instead of a life estate granted ?

3d. If for any reason the deed could not operate as a present conveyance, could it not take effect as a covenant to stand seised to the use of the grantee, which the Statute of Uses would execute in him ?

The judgment is affirmed.